**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ASHLEY MARIE SALAS, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No.  SA-25-CA-00118-XR |
| | § | |
| BEXAR COUNTY, KARNES COUNTY, | § | |
| MATTHEW CRUMP, CITY OF | § | |
| WINDCREST, VANESSA CALLAHAN, | | |
| DOE OFFICERS 1-10, DOE KARNES | | |
| COUNTY ATTORNEY, DOES 1-10, | | |
| INCLUSIVE, | | |
| *Defendants* | | |

**ORDER ON MOTIONS TO DISMISS**

On this date, the Court considered Defendants' motions to dismiss and to strike the Third

Amended Complaint (ECF Nos. 107, 109–111) and the associated responses and replies. After

careful consideration, the Court issues the following order.

**BACKGROUND**

This is a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that she was twice

arrested pursuant to an invalid warrant. She seeks to impose liability on the local governments and

officers responsible for her seizure.

**I. First Arrest**

According to the Third Amended Complaint, Plaintiff received a traffic citation in Karnes

County in September 2019 after a car crash. ECF No. 106 at 4. She posted a $700 cash bond with

Karnes County. *Id.* at 5.

On June 20, 2023, Plaintiff states that animal control personnel were called to her home in

Bexar County. *Id.* at 6. Plaintiff claims she encountered Defendant Crump, a Bexar County

Deputy, assisting animal control outside her home. *Id.* at 6–7. Crump then allegedly entered her

1

house without consent, obtained her information, determined that Karnes County issued a warrant for her arrest based on the 2019 accident, and arrested her. *Id.* at 6–8. Plaintiff claims that the arrest involved unreasonable force. *Id.*

Bexar County jailed Plaintiff for five hours before a magistrate judge ordered her release. *Id.* at 8. Plaintiff claims that the same day, Karnes County recalled the warrant after confirming that the $700 cash bond covered Plaintiff's citation and a related failure-to-appear charge. *Id.* at 9.

**II. Second Arrest**

According to the Third Amended Complaint, City of Windcrest police officers relied on the same, supposedly recalled warrant to arrest Plaintiff after a traffic stop on September 17, 2023. *Id.* at 10. This arrest supposedly involved excessive force. *Id.* The officers again took Plaintiff to the Bexar County Jail. *Id.* at 11. Plaintiff "then went through the magistrate process again where she was again told by the magistrate judge that her warrant had been recalled and extinguished and therefore was not valid when she was arrested." *Id.* at 11. Plaintiff nevertheless remained in custody overnight. *Id.* When she notified her jailers that her arrest was pursuant to an invalid warrant, they supposedly responded that she could not be released because "the Sargeant [sic] did not authorize he [sic] release." *Id.* at 12.

While Plaintiff was detained, one of her colleagues contacted Karnes County to inquire about the warrant. *Id.* Karnes County clerks told the colleague that the warrant had not been properly recalled due to an administrative error, so it appeared outstanding in the relevant state-wide system. *Id.*

Plaintiff nonetheless remained detained at the Bexar County Jail overnight. *Id.* at 12–13. The following morning at 8:00 a.m., she notified Defendant Callahan, a sergeant at the Bexar County Sheriff's Department, that her warrant had been recalled. *Id.* at 13. Callahan allegedly confirmed this to Plaintiff at 11:00 a.m. *Id.* But "Callahan refused to release Plaintiff . . . pursuant

to the policies and procedures from Bexar County that she was required to follow and/or because she abused her authority as a Sargeant [sic] and did not want to release [Plaintiff] until she considered it necessary." *Id.* Plaintiff suggests that Callahan delayed her release to retaliate against her for approaching Callahan's desk uninvited. *Id.*

Plaintiff was released at 5:00 p.m. on September 18. *Id.* at 14.

## III. Procedural History

Plaintiff twice amended her Complaint before several Defendants moved to dismiss its claims. Defendant Crump moved for summary judgment based on body-camera footage of his encounter with Plaintiff. On December 5, 2025, the Court held an oral hearing on those motions. Based on the parties' written and oral arguments, the Court:

(1) dismissed claims against Defendant Crump but granted Plaintiff leave to amend her complaint to allege that Crump violated her Fourth Amendment rights by entering her backyard;

(2) dismissed claims against City of Windcrest and its officers but granted Plaintiff leave to amend her Complaint to allege that specific Windcrest officers violated her Fourth Amendment rights; and

(3) dismissed claims against Defendant David Chapman.

ECF No. 104. Plaintiff has since entered into a settlement agreement with the City of Windcrest and its officers. ECF No. 121. On January 9, 2026, she filed her Third Amended Complaint. ECF No. 106. Defendants now move to dismiss or strike its allegations. ECF Nos. 107, 109–111.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences

4

favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

**DISCUSSION**

### I. Defendant Crump's Motion to Strike

Defendant Crump moves to strike the claims against him in the Third Amended Complaint. Rule 12(f) allows the Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

The Court already granted Crump summary judgment because bodycam footage showed that he never entered the interior of Plaintiff's home. The Court granted Plaintiff leave to replead her claim against Crump if she could "allege that Crump violated her Fourth Amendment rights when he entered her backyard." ECF No. 104. Plaintiff repleaded, but her Third Amended Complaint never alleges that Crump entered her backyard. Plaintiff instead alleges that Crump violated her Fourth Amendment rights by entering "the interior of [her] residence." ECF No. 106 at 15. The Court already granted summary judgment against this unlawful-entry theory. ECF No. 104.

Accordingly, Crump's motion to strike Plaintiff's claims against him must be granted. *See, e.g.*, *Cambridge Toxicology Grp. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007) (holding that the district court did not abuse its discretion by striking a counterclaim that had already been decided); *84 Lumber Co. v. F. H. Paschen, S. N. Nielsen & Assocs., LLC*, No. 12-1748, 2017 U.S. Dist. LEXIS 120537, at *11 (E.D. La. 2017) (granting a motion to strike where the claims had "already been dismissed with prejudice").

**II. Karnes County's Motion to Dismiss**

Defendant Karnes County moves to dismiss Plaintiff's Section 1983 claims against it under Rule 12(b)(6).[1]

**A. Plaintiff Failed to Plead *Monell* Liability Based on a Policy or Custom**

Plaintiff seeks to hold Karnes County liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). She alleges that "Defendant Karnes County had a policy, custom, or practice of enforcing unlawful and/or invalid warrants that causes individuals, including Plaintiff, to be unlawfully detained." ECF No. 106 at 24.

To state a claim against Karnes County under Section 1983 and *Monell*, Plaintiff must identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023). To plead the first element, Plaintiff must allege a "persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Pineda v. City of Hou.*, 291 F.3d 325, 328 (5th Cir. 2002).

Here, Plaintiff specifically alleges the following customs or policies in the Third Amended Complaint:

(1) "Hiring unqualified and poorly trained employees";

(2) "Failing to maintain a proficient cash bond system to notate when such bonds have been paid and satisfied";

---

[1] ECF No. 107. Karnes County also moved to dismiss claims against County Attorney David Chapman. Those claims were already dismissed. ECF No. 104. Plaintiff concedes that she did not attempt to reassert them in the Third Amended Complaint. ECF No. 112 at 1.

(3) "Failing to maintain a proficient warrant information system to protect citizens who have satisfied their bond conditions";

(4) "Subjecting unarmed citizens to official oppression and assault";

(5) "Failing to meaningfully address systemic issues and failures surrounding the recordation of cash bonds that are satisfied, and Defendant, Karnes County's, warrant information system";

(6) "Improperly disseminating outstanding warrants on law-abiding citizens despite having actual knowledge of the falsity of the warrant";

(7) "Refusing to immediately file, transmit, record, or publish warrant recalls to ensure that citizens like Plaintiff are not arrested for warrants that are not valid or enforceable"; and

(8) Failing to discipline county employees for their failure or refusal to file or record warrant recalls.

ECF No. 106 at 25–26.

**1. Plaintiff Fails to Plead Facts to Establish the Existence of a Policy or Custom**

To support a reasonable inference of these policies or customs, the Third Amended Complaint relies solely on "the fact that Ms. Salas was arrested for the same invalid warrant twice within a few months." ECF No. 106 at 24. It cites no other instances of similar conduct by Karnes County. *But see Miller v. Bexar Cnty.*, No. SA-23-CV-00085-OLG, 2024 U.S. Dist. LEXIS 54419, at *9 (W.D. Tex. 2024) ("Two occurrences do not reasonably support an inference that the County has engaged in a pattern of conduct that is so widespread and persistent as to constitute an official policy . . . ."); *Pineda*, 291 F.3d at 329 ("[O]ne act is not itself a custom. There must be a 'persistent and widespread practice.'"). Without further specific facts alleging persistent and widespread policies, Plaintiff fails to state a claim. *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247

7

(5th Cir. 2003) ("[I]solated unconstitutional actions by municipal employees will almost never trigger liability.").

In defense of her pleading, Plaintiff argues that "[i]n simple[] terms, in the context of *Monell* claims, plaintiffs are not required to set forth specific facts that prove the existence of a policy," and that it is enough to "simply describ[e] facts that suggest the existence of a policy in general terms." ECF No. 112 at 7 (citing *Thomas v. City of Galveston*, 800 F. Supp. 2d 826 (S.D. Tex. 2011)).

This is a misstatement of the law. "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Guillot v. Russell*, 59 F.4th 743, 752 (5th Cir. 2023). The Third Amended Complaint merely relies on Plaintiff's two arrests to "suggest the existence" of eight contributing policies. ECF No. 112 at 7. Those policies are stated "in general terms." *See id*. "Taken together, they express no single municipal policy but only a series of adversarial conclusions by [Plaintiff] . . . relating to her individual case." *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001). "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Id.*

### 2. Plaintiff Fails to Plead Facts to Establish Knowledge

Even if Plaintiff had properly pled a policy, "there remains the burden of demonstrating actual or constructive knowledge of the policy-making official for the municipality." *Pineda*, 291 F.3d at 330. "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id.* The Third Amended Complaint

8

includes no such allegations to establish knowledge on behalf of Karnes County or its policymakers.

**B. Plaintiff Fails to Plead *Monell* Liability Based on Failure to Train**

Plaintiff also pursues her Section 1983 claim against Karnes County on a theory that the county "fail[ed] to properly train and supervise its employees, with respect to internal communications regarding the status of cash bonds and active/inactive warrants." ECF No. 106 at 27. To state a claim on this theory, Plaintiff must allege specific facts that suggest: (1) the county failed to train or supervise the employees involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of Plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to Plaintiff's constitutional rights. *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018). Moreover, she "must allege with specificity how a particular training program is defective." *Benfer v. City of Baytown*, 120 F.4th 1272, 1287 (5th Cir. 2024).

Plaintiff has not done so. Instead, the Third Amended Complaint includes conclusory allegations regarding training (e.g., Karnes County had a policy of "[h]iring unqualified and poorly trained employees," ECF No. 106 at 25; Karnes County "rarely disciplin[es] or properly train[s] employees on the dangers of not communicating the status of warrants," *id.* at 27). She thus failed to plead Karnes County's liability for failure to train.

**C. Plaintiff Fails to Plead *Monell* Liability Based on Ratification**

To the extent Plaintiff alleges that Karnes County ratified its officers' unconstitutional actions, she again failed to state a claim. "Ratification provides another way of holding a city liable under § 1983. Ratification can suffice for *Monell* liability only if the authorized policymakers approve a subordinate's decision and the basis for it." *Benfer v. City of Baytown*, 120 F.4th 1272, 1287 (5th Cir. 2024) (citation modified).  Although the Third Amended Complaint names Karnes

County Attorney David Chapman as a policymaker, it makes no allegations that he approved of the county's alleged failure to recall the warrant.

Accordingly, Plaintiff failed to state a claim against Karnes County in the Third Amended Complaint.

## III. Defendant Bexar County's Motion to Dismiss

Plaintiff asserts two claims under Section 1983 against Bexar County. Bexar County moves to dismiss them under Rule 12(b)(6). ECF No. 110.

### A. Plaintiff Failed to Plead *Monell* Liability Related to Excessive Force

In her first Section 1983 claim against Bexar County, Plaintiff claims that the county had a bevy of policies or customs that "were the moving forces behind Defendant Crump's decision to use force on Ms. Salas, in violation of her constitutional rights under the Fourth Amendment." ECF No. 106 at 21. For support, Plaintiff relies only on the assertion that Defendant Crump used "unreasonable force" and "fail[ed] to provide Ms. Salas with her Miranda warnings." *Id.* at 20.

The Court already found that Crump did not unlawfully seize Plaintiff. *See* ECF No. 104. Plaintiff's pleading relies on conduct that did not violate her rights. Even if that conduct did violate her rights, Plaintiff alleges no further conduct to establish a policy or custom. As noted, "one act is not itself a custom. There must be a 'persistent and widespread practice.'" *Pineda*, 291 F.3d at 329. Plaintiff's conclusory allegations do not meet this requirement. Even if they did, Plaintiff again failed to plead knowledge on behalf of the municipality or its policymakers. *See id.* at 330 ("[T]here remains the burden of demonstrating actual or constructive knowledge of the policy-making official for the municipality.").

Similarly, Plaintiff includes only conclusory statements to support her other theories of liability related to unreasonable force. She claims that Bexar County failed "to properly train and supervise its officers." ECF No. 106 at 22. But she only states that the "inadequate" training "was

so obvious that it also constitutes an additional moving factor of . . . [the] violations of [Plaintiff's] constitutional rights." *Id.* She pleads that Bexar County failed to discipline its officers but states only that "[o]n information and belief, . . . Bexar County . . . rarely discipline[d] officers for using force." *Id.* She asserts that Bexar County ratified unconstitutional conduct but identifies no policymaker, no unconstitutional conduct, and no specific decision to ratify it. *Id.* at 23.

She accordingly failed to plead a Section 1983 violation under *Monell* based on an unlawful force.

### B. Plaintiff Failed to Plead *Monell* Liability Based on Her Delayed Release

Plaintiff also claims that Bexar County violated Section 1983 by "detaining her in the Bexar County Jail for several additional hours after it was confirmed that her arrest warrant had been recalled and was invalid." ECF No. 106 at 28–29. She alleges that Bexar County had "longstanding policies, customs, and/or practices" that led to her alleged over-detention. *Id.* But again, she fails to allege any other instances evidencing this policy. Because "one act is not itself a custom," *Pineda*, 291 F.3d at 329, Plaintiff failed to state a claim.[2]

## IV. Plaintiff Failed to State a Section 1983 Claim Against Defendant Callahan

Lastly, Defendant Callahan moves to dismiss Plaintiff's Section 1983 claim against her. ECF No. 111. This claim alleges that Callahan, as a sergeant "responsible for authorizing Plaintiff's detention and subsequent release," "caused Plaintiff to be detained . . . in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments." ECF No. 106 at 31.

---

[2] To the extent that Plaintiff pled that Bexar County failed to train its officers, she did not "allege with specificity how a particular training program is defective." *See Benfer v. City of Baytown*, 120 F.4th 1272, 1287 (5th Cir. 2024) (stating that such specificity is necessary for "liability to attach based on an inadequate training claim"); *see also Pineda*, 291 F.3d at 333 (holding that it will not "suffice to prove [that] an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury . . . .").

11

In the Third Amended Complaint, Plaintiff alleges that Callahan acknowledged that the warrant was invalid at 11:00 a.m. on September 20. Plaintiff further claims that Callahan did not authorize Plaintiff's release until around 5:00 p.m. Plaintiff thus alleged facts suggesting that Callahan detained Plaintiff for approximately six hours despite knowing that Plaintiff's warrant was recalled.

The question is whether these actions state a claim under Section 1983. While there is a "clearly established right to timely release from prison[,] . . . 'timely release' is not the same as instantaneous release." *Crittindon v. LeBlanc*, 37 F.4th 177, 188 (5th Cir. 2022). "[I]t is reasonable for jailers to have some administrative delay in processing an inmate's discharge." *Id.* There is no clear line marking "the amount of delay that is reasonable." *Id.* But Plaintiff points to no case in which a delay of six hours supported a claim. *Cf. id.* (finding actionable over-detentions ranging from 92 to 164 days, and 17 days of inaction after officials received notice); *Whirl v. Kern*, 407 F.2d 781, 793 (5th Cir. 1968) (nine months over-detention). If anything, precedent suggests that the delay must be substantially longer. *See Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980) ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."). Regardless, it is clear that "courts have declined to define the amount of delay that is reasonable." *Crittindon*, 37 F.4th at 188.

The Court must consider this unsettled law in light of Callahan's assertion of qualified immunity. ECF No. 111 at 10. A public official is entitled to immunity unless the plaintiff can allege that "the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). Because it is not clearly established that a six-hour delay in processing an inmate's discharge is unreasonable,

Callahan is entitled to qualified immunity. *See Sanchez v. Swyden*, 139 F.3d 464, 469 (5th Cir. 1998) (granting qualified immunity where officers detained the plaintiff for nearly 24 hours after receiving information confirming that Plaintiff was not subject to a warrant).

Finally, the Court notes that Plaintiff alleges this same Section 1983 over-detention claim against "at least one additional unknown officer with Bexar County who signed Plaintiff's release sheet [and] was also responsible for Plaintiff's unlawful detention." ECF No. 106 at 3. At oral hearing, the Court notified Plaintiff that her repleading must allege the specific identities of the officers involved. The Third Amended Complaint fails to name this officer or detail his conduct. It thus fails to state a claim against him. Besides, Plaintiff fails to show why this officer is not also entitled to qualified immunity.

**CONCLUSION**

Taking the allegations in the Third Amended Complaint as true, the Court understands why Plaintiff is aggrieved. But "[o]ne does not state a constitutional claim under section 1983 merely by alleging extraordinary negligence." *Rankin v. Wichita Falls*, 762 F.2d 444, 447 (5th Cir. 1985).

For the foregoing reasons, the Court issues the following Order:

(1) Defendant Crump's Motion to Strike (ECF No. 109) is **GRANTED** and the claims against him in the Third Amended Complaint are hereby stricken;

(2) Defendant Karnes County's Motion to Dismiss (ECF No. 107) is **GRANTED**;

(3) Defendant Karnes County's Motion to Strike (ECF No. 107) is **DENIED AS MOOT**;

(4) Defendant Bexar County's Motion to Dismiss (ECF No. 110) is **GRANTED**;

(5) Defendant Bexar County's Motion to Strike (ECF No. 110) is **DENIED AS MOOT**; and

(6) Defendant Callahan's Motion to Dismiss (ECF No. 111) is **GRANTED**.

13

Plaintiff's claims against Defendants City of Windcrest, Jonathan Imperato, Nicholas M. Zapata, Chelsea Brooks, Rick Gonzalez, Sean Cortez, and the Windcrest Does remain live pending settlement. *See* ECF No. 121. Plaintiff's claims against all other Defendants are **DISMISSED WITH PREJUDICE** in accordance with this Order.

It is so **ORDERED**.

**SIGNED** this May 8, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE